Robert L. Sterup
Shane Coleman
Holland & Hart LLP
401 North 31st Street
Suite 1500
Billings, MT  59101-1277
Telephone:  406-252-2166
Fax:  406-252-1669
rlsterup@hollandhart.com
spcoleman@hollandhart.com
Attorneys for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | | |
|---|---|---|
| WESTERN SECURITY BANK,<br>A Division of Glacier Bank, | ) ) ) | Cause No. _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| MERIDIAN SURGICAL<br>PARTNERS, LLC, MERIDIAN<br>SURGICAL PARTNERS-<br>MONTANA, LLC, OMNI<br>FUNDING CORP., | ) ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) | |

For its Complaint Western Security Bank ("Western Security") states,

avers, and alleges as follows:

## PARTIES JURISDICTION AND VENUE

1.      Western Security is a Montana financial institution with its principal place of business in Montana.

2.      Meridian Surgical Partners, LLC ("Meridian") is a Delaware Limited Liability Company with its principal place of business in Tennessee.  The members of Meridian are MS Holding Company, Inc., a Delaware corporation with its principal place of business in Tennessee or Georgia, and individuals, David Bacon, Kenneth Hancock, Catherine Kowalski, James Uden, and John Wilson, all of whom are citizens and residents of  Tennessee.

3.      Meridian Surgical Partners–Montana, LLC ("Meridian-Montana") is a Delaware Limited Liability Company with its principal place of business in Tennessee.  The sole member of Meridian-Montana is Meridian Surgical Partners, LLC.

4.      Omni Funding Corporation ("OMNI") is a Delaware corporation with its principal place of business in New York.

5.      The matters in controversy, exclusive of interest and costs, exceed the sum of seventy-five thousand dollars ($75,000.00).  The Plaintiff is of diverse citizenship from the Defendants.  28 U.S.C. §§ 1332(a), 1348.  This Court has personal jurisdiction of the Parties, and has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).

6.     Jurisdiction also is properly before this Court pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).  Western Security seeks judicial interpretation of the Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), and the Federal False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), including a declaratory judgment whether Meridian's business practices contravene the AKS.

7.     The events giving rise to this action occurred in the State of Montana. Venue is properly laid in this District pursuant to 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL COUNTS

8.     Western Security entered into a $3.02 million loan (the "Loan") with affiliates of Meridian as of December 12, 2011.  The Loan contemplated construction of an ambulatory surgery center in Billings, Montana (the "Billings ASC").

9.     Under the Loan, Western Security loaned funds to Meridian affiliate Omni Funding Corp. ("Omni") to fund construction of the Billings ASC.  Omni in turn entered into a lease agreement (the "Lease"), also dated December 12, 2011, with Orthopaedic Neuro Institute Surgical Center, LLC ("ONISC"), an entity controlled by Meridian, and with Western Security as Collateral Agent.  Certain physician members of ONISC (the "Physician Investors") each entered into a Commercial Guaranty of a portion of Omni's debt to Western Security.  Meridian-

Montana entered into a separate Guaranty (the "Meridian-Montana Guaranty")

with Western Security as collateral agent.

10.     Under the loan as structured by Meridian, and as reflected in the loan

documents, Omni's loan payments to Western Security were in an amount equal to

ONISC's lease payments to Omni.  In turn, Meridian-Montana guaranteed all

unpaid obligations of the Lease.  Among other things, Meridian-Montana agreed to

guarantee the full and punctual payment, performance and satisfaction of 46.25%

of ONISC's Lease obligations.  Meridian-Montana further agreed to pay legal

expenses incurred in enforcement of the Meridian-Montana Guaranty, to the

jurisdiction of Montana U.S. District Court, and to waiver of "any defenses given

to guarantors at law or in equity other than actual payment and performance of" its

obligations under the Meridian-Montana guaranty.  The guarantees of the

Physician Investors, coupled with the Meridian-Montana Guaranty, equaled 125%

of the total loan amount.  Meridian-Montana's agreement to guarantee 46.25% of

obligations under the Lease thus was a material inducement to Western Security's

agreement to enter into the loan transaction.

11.     Following execution of the loan documents Western Security loaned

amounts in excess of $2.0 million to Omni.

12.     During the period December 2011 through June 2012, the Loan

documents provided for interest only payments to Western Security.  Commencing

July 2012, the Loan provided for monthly principal and interest payments to Western Security in the amount of $42,837.72 .

13.     In 2012 the Billings ASC was substantially constructed but failed to open for business.  Meridian through its affiliates failed to obtain patient transfers and physician privileges from Billings area hospitals.  In addition, a pivotal physician-investor, and partner of Meridian in ONISC, was implicated in certain legal difficulties.

14.     Notwithstanding the failure of the Billings ASC to open its doors, Meridian caused the interest only loan payments to be made to Western Security through June 2012.  In June-July 2012 Meridian through its Chief Financial officer, John Wilson, and its Regional President, Kenny Hancock, requested a six-month extension of the interest only payments.

15.     In July 2012 Western Security agreed to extend the interest only loan payments for an additional three months.  Wilson, on behalf of Omni, signed the July 11, 2012 Change in Terms Agreement extending the interest only payment period.

16.     In October 2012 Western Security consented to another Change in Terms Agreement, again at the request of Meridian.  Wilson signed the October 12, 2012 Change in Terms Agreement on behalf of Omni.

17.     During the period 2012-2013 Meridian repeatedly represented that it would continue to make loan payments, notwithstanding that the Billings ASC had not opened for business, including the following representations:

a.     On May 17, 2012, Wilson represented to Western Security that "Meridian is a solid company with a good reputation and would work through whatever situation with us to ensure we are taken care of."

b.     In correspondence dated July 2, 2012 seeking an extension of interest only payments on the loan, Hancock stated:  "As you know, last week I had several meeting in Billings focused on a solution for the Billings OMNI Surgical Center…. We're hopeful that we get to a solution as quickly as possible."

c.     On December 27, 2012 Hancock informed Western Security that "Meridian has fronted the money to make the October, November and December payments on the loan," and that "Meridian has decided to advance sufficient funds to make the 1/12/13 payment."

d.     On January 17, 2013, Wilson represented to Western Security that "Meridian will continue to make payments on this loan until this is resolved …."

e.     On January 24, 2013 Wilson represented to Western Security that "Meridian will continue to advance money to the company to make the loan payment," while further confirming that "payments are not coming from the Billings Surgery Center operations."

f.      On August 16, 2013 Wilson represented to Western Security that it had initiated an arbitration against Dr. John Schneider, one of the Physician Investors in ONISC, and that "Meridian is going to ensure that all payments are kept current until the arbitration is complete."

18.     Meridian discontinued making Loan payments commencing with the September 2013 payment.  At time of loan default the unpaid loan amount was $1,962,961.09.

19.     In response to Western Security's demands, and in further recognition of its obligations, during the period August – October 2013 Meridian consistently represented its intent to fund its share of the unpaid debt, including the following:

a.      On August 19, 2013, Wilson informed Western Security that Meridian was "exploring options for" paying a proportionate share of the unpaid debt.

b.      On October 17, 2003, Wilson informed Western Security that Meridian proposed to pay forty-one percent (41%) of the debt.

c.      During the period October 18-23, 2013, Wilson sought from Western Security a proposed form of agreement for Meridian's payment of an amount proportionate to Meridian's ownership interest in the Billings ASC.

20.     On October 29, 2013, after having preliminarily proposed to fund its proportionate share of the unpaid loan debt, Meridian through Wilson abruptly informed Western Security that Meridian declined to further honor the loan

obligations.  Meridian informed Western Security that "the Board" had so elected on the basis that "Meridian-Montana" is the "only" guarantor and "there are no assets in Meridian–Montana."

21.    Meridian-Montana is a wholly-owned subsidiary of Meridian. Meridian has complete control over the operations of Meridian-Montana, including the following facts and circumstances:

a.    The Meridian-Montana Operating Agreement provides:  "Sect. 3.2 (b)…  The sole member (Meridian) reserves the right and power to overrule any action of the Chief Executive Officer …. The Chief Executive Officer must operate within the parameters set forth by the sole member, which holds all general discretionary authority."

b.    A May 2012 Private Offering Memorandum generated by Meridian in connection with the Billings ASC, but which Meridian did not disclose to Western Security, stated that Meridian-Montana would manage the Billings ASC, including "day-to-day" operations, that Meridian-Montana  "will be able to exert significant influence and control over the management and policies of" the Billings ASC, that Meridian-Montana "has been formed as a wholly-owned subsidiary of" Meridian, and that "the growth strategy of Meridian will place demands upon current management and other resources of Meridian and … will require additional

working capital, information systems, management, operational and other resources."

      c.     Meridian-Montana had no independent officers, directors or employees.

      d.     All acts and conduct of Meridian-Montana were in fact carried out by Meridian, including negotiation and execution of documents relating to the Loan, negotiation and execution of documents modifying loan terms, and negotiations for payments due from Meridian-Montana under the guaranty.

      22.     Meridian-Montana has a 46.25% Membership Interest in ONISC. Under the ONISC membership agreement, Meridian-Montana controls the board of directors of ONISC.

      23.     John Wilson as Chief Financial Officer of Omni executed the Loan and Lease agreements on behalf of Omni.

      24.     John Wilson as Chief Financial Officer of Meridian-Montana executed the Meridian-Montana Guaranty on behalf of Meridian-Montana.

      25.     John Wilson as Chief Financial Officer of Meridian executed a Unanimous Consent under which Meridian authorized Meridian-Montana to enter into the Guaranty.

26.     John Wilson as Secretary of ONISC executed the Lease agreement on behalf of ONISC.  Wilson also executed ONISC agreements with ONI Realty, LLC on behalf of ONISC.

27.     John Wilson and Meridian officer Kenny Hancock engaged in discussions and negotiations on behalf of Meridian, Meridian-Montana, Omni, ONISC, and ONI Realty, LLC.

28.     Meridian induced Western Security to enter into the Loan with assurances that Meridian-Montana would substantially guarantee ONISC's Lease obligations, which in turn would provide Omni with sufficient funds to satisfy its loan obligations to Western Security.  Meridian thereafter failed to adequately capitalize Meridian-Montana, notwithstanding that Meridian is the sole member of Meridian-Montana.  Meridian failed to adequately capitalize ONISC, notwithstanding that Meridian controlled ONISC.  Meridian failed to adequately capitalize Omni, notwithstanding that Omni borrowed over $2.0 million from Western Security.

a.     Omni tax returns provided to Western Security in 2013 indicated that Omni lacked any significant assets or other resources.

b.     Financial statements dated June 2013 for the Billing ASC provided by Meridian to Western Security identify negative shareholders' equity in the amount of  $273,742.00.

c.      Conversely, financial statements dated June 2013 provided by

Meridian to Western Security indicate that Meridian had shareholders' equity in an

amount exceeding $104 million.

29.     Notwithstanding that Meridian and its affiliates operated as a single

economic entity, when the Billings ASC failed to open and default on the Loan

occurred, Meridian declined to make payment on the basis that its affiliates lacked

assets.

30.     During negotiations for the Loan Meridian failed to disclose that its

business model was at risk of contravening Federal Law.  A former Meridian

employee has filed suit in Tennessee Federal District Court, *United States of*

*America ex rel Thomas Reed Simmons v. Meridian Surgical Partners, LLC et al*,

alleging that Meridian's business model violates the Federal Anti-Kickback

Statute, 42 U.S.C. § 1320a-7b(b) ("AKS"), and the Federal False Claims Act, 31

U.S.C. §§ 3729-3733 ("FCA").  Additionally, in its May 2010 Private Offering

Memorandum for the Billings ASC Meridian identified a "risk" that its operations

"might be viewed to constitute a violation of the Anti-Kickback Statute."

Meridian failed to disclose the risk to Western Security.  To the contrary, Meridian

through its representatives represented that Meridian's business model was in

compliance with all applicable laws and regulations, including the following:

a.      The Business Loan Agreement executed by John Wilson on behalf of Omni provides:  "No … claim, investigation , administrative proceeding or similar action … against Borrower is pending or, to the knowledge of Borrower, threatened … other than … events, if any, that have been disclosed to the Lender in writing."

b.      Under the Business Loan Agreement dated as of December 12, 2011 (the "Loan Agreement") the borrower agreed to "[c]omply in all material respects with all  laws … applicable to the conduct of the Borrower's properties, business and operations …."

## COUNT I

## <u>DECLARATORY RELIEF</u>

31.     Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

32.     Plaintiff and the Defendants have a justiciable controversy, involving actual, present and existing disputes.  The parties have opposing positions on this issue, which positions are direct and substantial, and of which a judicial determination will be final and conclusive.

33.     Plaintiff is entitled to an Order of the Court interpreting and declaring the Parties' respective rights and obligations.

## COUNT II

## LOAN DEFAULT-OMNI

34.     Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

35.     Omni is party to the Loan Agreement and the Promissory Note, also dated as of December 12, 2011 with Western Security, under which Omni borrowed amounts in excess of $2.0 million from Western Security.

36.     The Promissory Note provides that borrower's "[f]ailure to make a scheduled payment hereunder shall constitute an Event of Default under this Note if not timely cured in accordance with this Note or the Loan Agreement," and that "[u]pon the occurrence and during the continuance of an Event of Default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and the Borrower will pay that amount."

37.     Omni is in default of its obligations under its loan agreement with Western Security.  As of the date of default, the principal amount due was $1,949,142.24, together with accrued interest of $11,983.22 and late charges of $1835.63.  Interest continues to accrue at the rate of $272.35 per diem.

38.     Omni agreed to pay Western Security's costs of enforcing the Promissory Note and Business Loan Agreement including reasonable attorneys' fees.

39.     Western Security is entitled to judgment on the Loan in the full principal amount due together with accrued interest and costs of collection.

## COUNT III

## MONTANA-MERIDIAN GUARANTEE

40.     Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

41.     Meridian-Montana guaranteed payment of the Lease obligations.  The Meridian-Montana Guaranty provides that Meridian-Montana "absolutely and unconditionally guarantees full and punctual payment, performance and satisfaction of Guarantor's Share of the Obligations,"  and that "this is a guaranty of payment and performance and not of collection, so [Western Security] can enforce this Guaranty against Guarantor even when [Western Security] has not exhausted [its] remedies against anyone else obligated to pay the Obligations…."

42.     The Lease provides that upon occurrence of an Event of Default, Western Security may "[e]nforce any and all rights, interests and remedies created and existing under the Lease Documents" and "all rights, interests, and remedies against the Meridian Guarantor…."  Lease sect. 25(c).  The Lease further provides that no remedy afforded to Western Security is intended to be exclusive, and that the exercise of any one or more remedies by Western Security "shall not prelude the later exercise by (Western Security) of  any or all such other remedies."

43.     Under its Guaranty Meridian-Montana agreed to pay 46.25% of all unpaid Lease obligations, and further agreed "not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by OMNI, the Guarantor, or both."  Guaranty sect. 7.

44.     An event of default has occurred under the Lease.  Despite demand, Meridian-Montana has declined and refused to make payment of amounts due from it as a guarantor.

45.     Western Security is entitled to judgment on Meridian-Montana Guaranty in the full principal amount due together with accrued interest and costs of collection.

## COUNT IV

## PIERCING THE CORPORATE VEIL-MERIDIAN MONTANA

46.     Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

47.     Meridian is liable to Western Security for the full amount due from Meridian-Montana under the Meridian-Montana Guaranty.

48.     Meridian-Montana was a mere instrumentality or alter-ego of Meridian.  Meridian and Meridian-Montana acted as a single economic entity.

49.     Meridian-Montana was not adequately capitalized by Meridian. Meridian-Montana is not now and never has been solvent.  Meridian-Montana did not have independent officers, directors and employees.  Meridian-Montana served as a façade for Meridian.

50.     Meridian used the corporate form to perpetrate injustice or other wrong.  Meridian induced Western Security to accept a loan structure in which Meridian guaranteed ONISC's lease payments to Omni, which in turn provided the funds for Omni's loan payments to Western Security.  Despite these representations, Meridian then failed to adequately capitalize Meridian-Montana. When it became apparent that the Billings ASC was experiencing significant difficulties, and in implicit recognition of its obligation to capitalize its affiliates, Meridian committed to honor the Loan, and partially undertook to honor the loan obligations, while also engaging in substantial efforts to restructure the loan. Because Omni,  ONISC and Meridian – Montana lacked resources, all such payments were made from Meridian's resources.  However, Meridian thereafter declined to further honor the Loan, expressly because Meridian-Montana has no assets, a condition created by Meridian.

51.     Meridian's acts and conduct are the source of injustice or unfairness that is a result of an abuse of the corporate form.    Meridian-Montana operated as a sham or shell through which Meridian induced a multi-million dollar  loan  from

Western Security, only to later decline to honor the Loan, instead invoking the insolvency of its sham subsidiary.

52.    Western Security is entitled to judgment against Meridian for the full principal amount of the Meridian-Montana Guaranty together with accrued interest and costs of collection.

## COUNT V

## PIERCING THE CORPORATE VEIL-OMNI

53.    Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

54.    Meridian is liable to Western Security for the full amount due from Omni under the Loan.

55.    Omni was a mere instrumentality or alter-ego of Meridian.  Meridian and Omni acted as a single economic entity.  Among other things, Meridian officer John Wilson executed agreements on behalf of Omni, Meridian-Montana, ONISC and ONI Realty, while Wilson and Meridian officer Kenny Hancock negotiated loan modifications on behalf of Omni, and Meridian used its resources to fund payments by Omni on the Loan.

56.    Omni was not adequately capitalized by Meridian.  Omni is not now and never has been solvent.  Omni did not have independent officers, directors and employees.  Omni served as a façade for Meridian.

57.    Meridian used the corporate form to perpetrate injustice or other wrong.  Meridian induced Western Security loan significant amounts to Omni. Despite these representations, Meridian failed to adequately capitalize Omni.

58.    Meridian's acts and conduct are the source of injustice or unfairness that is a result of an abuse of the corporate form.  Omni operated as a sham or shell through which Meridian induced a multi-million dollar loan from Western Security, only to later decline to honor the Loan, instead invoking the insolvency of its sham subsidiary.

59.    Western Security is entitled to judgment against Meridian for the full principal amount of the Omni Loan together with accrued interest and costs of collection.

## COUNT VI

## NEGLIGENT MISREPRESENTATION

60.    Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

61.    Meridian failed to exercise reasonable care or competence in obtaining or communicating information to Western Security.

62.    In negotiations for the Loan, and when it entered into the Loan, Meridian on behalf of itself and its subsidiaries and affiliates warranted and

represented that funds borrowed from Western Security would be used for a lawful business purpose.

63.     Meridian failed to disclose that its business model created a risk of contravention of Federal law.  Meridian knew of the risk, as reflected in a Private Offering Memorandum, but failed to disclose the risk to Western Security.

64.     A whistleblower former Meridian employee has brought suit alleging that Meridian's business model contravenes the Federal Anti-Kickback Statute and the Federal False Claims Act.  Upon information and belief, the Meridian subsidiary at issue in the Tennessee Federal Court action employs the same Meridian business model as that proposed by Meridian for the Billings ASC.

65.     Meridian failed to exercise reasonable care or competence to communicate the risk that a pivotal figure in the transaction was under legal scrutiny for certain of his actions, and that the claims against the physician created significant risk that the Billings ASC would never open.

66.     Meridian failed to exercise reasonable care or competence to communicate the risk that Billings area hospitals were unlikely to enter into patient transfer agreements, were unlikely to grant privileges to physicians, and of the significant risk that the Billings ASC would never open.

67.     For Meridian's negligent misrepresentations Western Security is entitled to damages in an amount to be established at trial.

## COUNT VII

## __TORTIOUS INTERFERENCE__

68.     Plaintiff incorporates herein the allegations and averments set forth in the preceding paragraphs.

69.     In the alternative, Meridian tortiously interfered in contracts to which Western Security is a party.  Meridian exercised its control of its subsidiaries and affiliates to cause those entities to default on their obligations to Western Security. Meridian officers, directors and employees exerted control over the subsidiaries and affiliates in a fashion that made it impossible for those entities to perform their contractual obligations to Western Security.

70.     Meridian's acts and conduct were intentional and willful, were calculated to cause damage to Western Security with the unlawful purpose of causing damage or loss, were without right or justifiable cause, and actual damages and loss have resulted.

71.     For Meridian's tortious interference Western Security is entitled to damages in an amount to be established at trial.

### JURY DEMAND

Plaintiff demands trial by jury.

### PRAYER FOR RELIEF

__WHEREFORE__, Plaintiff prays as follows:

1.      For declaratory relief;

2.      For compensatory damages;

3.      For an award of its attorneys' fees and costs; and

4.      For such other and further relief as the Court deems just and proper.

Dated this 19th day of December, 2013.


      /s/ Robert L. Sterup
Robert L. Sterup
**ATTORNEYS FOR PLAINTIFF**


6531584_1