Laurence Stinson
Stinson Law Group, P.C.
1421 Rumsey Avenue
Cody, Wyoming 82414
Telephone: (307) 587-0300
Facsimile: (307) 527-6092
Laurence@stinsonlawyers.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| WESTERN SECURITY BANK, A Division of Glacier Bank, | Case No. CV-13-157-BLG-SEH |
| Plaintiff, | |
| vs. | ANSWER OF WYOMING DEFENDANTS WINZENREID, EMERY, AND BIG HORN BASIN BONE AND JOINT, LLC, TO THIRD PARTY COMPLAINT AND FOURTH PARTY COMPLAINT OF JAY WINZENREID, M.D., STEPHEN EMERY, M.D., AND BIG HORN BASIN BONE AND JOINT, LLC. AND DEMAND FOR JURY TRIAL |
| MERIDIAN SURGICAL PARTNERS, LLC, MERIDIAN SURGICAL PARTNERS-MONTANA, LLC, OMNI FUNDING CORP., | |
| Defendants. | |
| OMNI FUNDING CORP. | |
| Third Party Plaintiff, | |
| vs. | |
| SCHNEIDER LIMITED PARTNERSHIP, ORTHOPAEDIC NEURO INSTITUTE SURGICAL CENTER, LLC, JAY WINZENRIED, M.D., STEPHEN EMERY, BIG HORN BASIN BONE AND JOINT, LLC, ANDREW BAKER, DANIEL MATTSON, | |
| Third Party Defendants. | |

|  |  |
|---|---|
| vs.<br><br>MERIDIAN SURGICAL PARTNERS,<br>LLC. | |

COMES NOW Jay Winzenreid, M.D., Stephen Emery, M.D., and Big Horn Basin Bone and Joint, LLC (collectively referred to as "Wyoming Defendants" in both the answer and fourth-party complaint) and for their answer to the third-party complaint brought by Omni Funding Corp. (hereinafter "Omni") do hereby admit, deny, and state that they are without sufficient information as provided herein.

## ANSWER TO THIRD PARTY COMPLAINT

1.      Wyoming Defendants admit upon information and belief, that Omni Funding Corp. ("Omni") is a Delaware corporation but are without sufficient knowledge to know its principle place of business and therefore deny the same.

2.      The allegation in Paragraph 2 of the Third Party Complaint is not directed to the Wyoming Defendants and accordingly, a response by the Wyoming Defendants is not required.

3.      Wyoming Defendants admit that Jay Winzenreid, M.D. is a citizen of Wyoming.

4.     Wyoming Defendants admit that Stephen Emery (who is more correctly identified as Stephen Emery, M.D.,) is a citizen of Wyoming.

5.     Wyoming Defendants admit that Big Horn Basin Bone and Joint, LLC is a company with its principle place of business in Wyoming.

6.     Wyoming Defendants are without knowledge and information sufficient to form a belief about the truth or falsity of the allegation in paragraphs 6 and so deny the same.

7.     Wyoming Defendants are without knowledge and information sufficient to form a belief about the truth or falsity of the allegation in paragraph 7 and so deny the same.

8.     Upon information and belief, Wyoming Defendants admit that Orthopaedic Neuro Institute Surgical Center, LLC (herein referred to as "ONISC") is a Delaware Limited Liability Company but cannot identify its principal place of business.

9.     Wyoming Defendants admit, upon information and belief and information contained within the pleadings, that Omni closed on a loan agreement in which it borrowed funds from Western Security Bank (herein referred to as WSB).

10.    Wyoming Defendants admit that, based upon the documentation,

each guaranteed Omni's loan from WSB at 12.5% of all indebtedness.  The remaining allegations in Paragraph 10 are not directed to the Wyoming Defendants and accordingly, a response by the Wyoming Defendants is not required.

11.     Wyoming Defendants admit, upon information and belief, that they each executed a Commercial Guaranty in favor of Western Security Bank for payment of his or its proportionate share of the loan obligation in the event of a default.

12.     The allegations in Paragraph 12 are not directed to the Wyoming Defendants and accordingly, a response by the Wyoming Defendants is not required. To the extent a response is required, Wyoming Defendants are without sufficient information to admit or deny the allegations therein and so generally deny the allegations in Paragraph 12.

13.     The allegations in Paragraph 13 do not call for a response from the Wyoming Defendants and accordingly, a response from the Wyoming Defendants is not required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 13.

14.     The allegations in Paragraph 14 do not call for a response by the Wyoming Defendants. To the extent a response is required, Wyoming

Defendants are without sufficient information to admit or deny the allegations in Paragraph 14, and so generally deny the same.

15.    Wyoming Defendants are without knowledge and information sufficient to form a belief about the truth or falsity of the allegation in Paragraph 15 and so denies the same.  Wyoming Defendants are not privy to the acts and actions of Western Security Bank.

16.    The allegations in Paragraph 16 do not call for a response by the Wyoming Defendants and accordingly, a response from the Wyoming Defendants is not required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 16.

### RESPONSES TO ALLEGATIONS IN COUNT I

17.    Wyoming Defendants incorporate herein their responses to Paragraphs 1 through 16 above.

18.    Insofar as Omni is seeking findings of law, legal conclusions, or judicial determinations, no response is required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 18.

19.    Insofar as Omni is seeking findings of law, legal conclusions, or judicial determinations, no response is required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 19.

**RESPONSES TO ALLEGATIONS IN COUNT II**

20.     Wyoming Defendants incorporate herein their responses to Paragraphs 1 through 19 above.

21.     Wyoming Defendants are without knowledge and information sufficient to form a belief about the truth or falsity of the allegation in Paragraph 21 regarding what was or was not a material inducement for Omni to enter into the Business Loan Agreement with Plaintiff Western Security Bank.

22.     The allegation in Paragraph 22 of Omni's Third Party Complaint is a statement that calls for no response.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 22.

**RESPONSE TO ALLEGATIONS IN COUNT III**

23.     Wyoming Defendants incorporate herein their responses to Paragraphs 1 through 22 above.

24.     The allegation in Paragraph 24 of Omni's Third Party Complaint is a statement that calls for no response.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 24.

## RESPONSE TO ALLEGATIONS IN COUNT IV

25.     Wyoming Defendants incorporate herein their responses to Paragraphs 1 through 24 above.

26.     The allegations in Paragraph 26 are not directed to the Wyoming Defendants and accordingly, a response by the Wyoming Defendants is not required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 26.

27.     The allegations in Paragraph 27 are not directed to the Wyoming Defendants and accordingly, a response by the Wyoming Defendants is not required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 27.

## RESPONSE TO ALLEGATIONS IN COUNT V

28.     Wyoming Defendants incorporate herein their responses to Paragraphs 1 through 27 above.

29.     Insofar as Omni is seeking findings of law, legal conclusions, or judicial determinations, no response is required.  To the extent a response is required, Wyoming Defendants deny the allegations in Paragraph 29.

30.     The allegation in Paragraph 30 of Omni's Third Party Complaint is a statement that calls for no response.  To the extent a response is required,

Wyoming Defendants deny the allegations in Paragraph 30.

## AFFIRMATIVE DEFENSES

Wyoming Defendants assert the following affirmative defenses:

1.  Third Party Plaintiff ("Omni") has failed to state a claim upon which relief may be granted.

2.  Omni has failed to allege any facts that make the Wyoming Defendants members, agents, or sureties for Orthopaedic Neuro Institute Surgical Center ("ONISC") insofar as any loan guarantee.

3.  To the extent Wyoming Defendants ultimately owe Omni any obligation either directly or indirectly, Wyoming Defendants are entitled to any offset or indemnification or equitable indemnification from Meridian Surgical Partners – Montana and/or Meridian Surgical Partners, LLC.

4.  To the extent Wyoming Defendants owe Omni any obligation either directly or indirectly due to Omni's obligations to Plaintiff Western Security Bank, Wyoming Defendants are entitled to a reduction, offset or indemnification as a result of the sale or removal of any medical equipment from the ONISC ambulatory surgical center ("Billings ASC").

5.    To the extent Wyoming Defendants owe Plaintiff Western Security Bank ("WSB") any obligation, Wyoming Defendants are entitled to reduction or offset due to any sale in medical equipment from the Billings ASC.

6.    Wyoming Defendants are generally entitled to reduction or offset due to any conversion of medical equipment from the Billings ASC by Meridian Surgical Partners, LLC (herein after "MSP") or their affiliates.

7.    Omni's claims are barred by laches, unclean hands, and/or equitable estoppel.

8.    Discovery is ongoing, and Wyoming Defendants reserve the right to amend their Answer and rely on any additional affirmative defenses that may become available or apparent during the course of discovery.

WHEREFORE Wyoming Defendants pray that this court dismiss the action of Omni; and award costs to the Wyoming Defendants.

## FOURTH PARTY COMPLAINT

COMES NOW the Wyoming Defendants and for their fourth party complaint against Meridian Surgical Partners, LLC, (hereinafter "MSP") do

hereby state, affirm, and allege as follows:

1.   Jay Winzenreid, M.D. is a citizen of Wyoming.

2.   Stephen Emery, M.D. is a citizen of Wyoming.

3.   Big Horn Basin Bone and Joint, LLC is a company with its principle place of business in Wyoming.

4.   MSP is a Delaware Limited Liability Company with its principal place of business in Tennessee.  The members of MSP are, upon information and belief, MS Holding Company, Inc., a Delaware corporation with its principle place of business in Tennessee or Georgia, and individuals, David Bacon, Kenneth Hancock, Catherine Kowalski, James Uden, and Jon Wilson, all of whom are citizens and residents of Tennessee.

5.   Orthopaedic Neuro Institute Surgical Center, LLC ("ONISC") is a Delaware Limited Liability Company with its principle place of business unknown to these defendants.

6.   Omni Funding Corp. ("Omni") is a Delaware Corporation with its principle place of business in New York.

7.   Meridian Surgical Partners – Montana, LLC (hereinafter "MSPM") is a Delaware Limited Liability Company with its principle place of

business in Tennessee.  The sole member of MSPM is MSP.

8.  The facts and circumstances discussed herein, which facts and circumstances give rise to tort or extra-contractual claims, occurred principally in the State of Montana, the surgical center at the heart of this dispute is in Billings, Montana, and jurisdiction and venue are appropriate in this court.

### FACTS COMMON TO ALL COUNTS

9.  The prior allegations are incorporated herein.

10.  Wyoming Defendants are in this lawsuit because Meridian Surgical Partners, LLC, failed, despite their representations and inducements, to license, manage, and operate the ONISC ambulatory surgical center ("Billings ASC").

11.  Prior to the formation of Omni and ONISC, MSP, through members of its management team, met with Dr. Schmidt, Dr. Emery, and Dr. Winzenreid.  In the several communications that ensued, MSP was consistently advised by the Wyoming Defendants and other investors that none was willing to take call in Billings, Montana and none had privileges at the local hospitals in Billings, Montana.

12.   It was represented to all physician investors that MSP would handle licensure and credentialing and that it would not be necessary for any physician investor to obtain privileges at a Billings hospital or take call at a Billings hospital to secure operational license.

13.   MSP was specifically retained and became an investment and operational partner in the surgical center due its self-proclaimed expertise in surgical center operation and management.

14.   MSP, or their representatives or agents, orchestrated and handled the formation of ONISC, MSPM, and other companies relevant to the Billings ASC.   MSP was responsible for the drafting and preparation of the formation documents of these companies.

15.   MSP created and distributed the Private Offering Memorandum to recruit investors and raise capital for the surgical center.

16.   MSP prepared, presented, and advised the Wyoming Defendants on the formation documents for ONISC and Omni.   Based on the representations of MSP, the Wyoming Defendants executed the documents provided to them by MSP.

17.   The Wyoming Defendants were ignorant of sophisticated banking mechanisms and pass through collateral guarantees and relied upon MSP to handle this aspect of the ASC funding transaction.

18.   It was MSP that brought Omni into the Billings ASC project and its banking transactions and required its use.   MSP failed to advise the Wyoming Defendants of the questionable organizational structure of Omni.

19.   MSPM was designated as the management company for ONISC.

20.   The management company was to manage and administer the business functions of the surgical center.

21.   The management company included all or most of the MSP senior personnel including Buddy Bacon, Kenny Hancock, John Wilson, Katherine Kowalski, and 12 others.   All of these people were employed by MSP and not MSP-Montana.

22.   The management company was to coordinate all reasonable and necessary actions to maintain all licenses, permits, and certificates required for operation of the surgery center, and to ensure that all appropriate certification and accreditation available to the surgery center's operations were obtained.

23.   MSP assumed the duties and obligations of obtaining licensure to operate the center.  MSP and not MSPM handled all negotiations, all document preparation, all licensure and certification communication, and provided all management personnel, which personnel are on the MSP management team.  When it finally disclosed its failure to obtain licensure, it was MSP and not MSPM that communicated with the claimants and it was and is MSP that continues to communicate with the claimants regarding any surgery center business.

24.   MSP understood prior to construction of the surgical center what state and federal licensure and certification was necessary to operate the surgical center.

25.   Prior to, during, and following construction, MSP marketed itself as having experience and a specialty in surgical center business management and surgical center operation, including financial aspects of operation.  MSP represented, explicitly and impliedly, that it would handle licensure, certification, and accreditation to open and operate the surgical center.

26.  MSP failed to obtain appropriate licensure and certification for the surgical center.   When MSP failed to obtain appropriate licensure and certification to open and operate the surgical center, the predicted and expected revenue for the operation of ONISC failed to materialize.   Without such revenue the debt owed to Omni and/or WSB was not serviced.   That failure contributed to the lawsuit by WSB against Omni.

27.  Among other failures, MSP failed to secure commitments for the necessary transfer order and any other licenses in advance of recommending a multi-million dollar build of the surgical center property and investment into surgical center equipment; failed to make any diligent or focused inquiry into licensure to operate the surgical center in advance of construction in order to coordinate and maintain licensure; failed to obtain a transfer agreement or necessary licensure while the surgical center was being built; failed to obtain licensure necessary to operate the surgical center following construction; failed to honestly and timely communicate to Drs. Winzenreid, Emery, and Schmidt that necessary steps to open and operate the surgical center were not taken in advance of

construction and not diligently pursued during construction; and failed to take effective mitigation measures.

28.     MSP inaccurately and falsely blamed the legal problems of John Schneider as the cause for the surgical center's failure to open and operate.  Yet just weeks earlier MSP was claiming that the local Billings hospitals were engaged in unlawful antitrust activity and that was the reason that a transfer agreement was not obtained; at that time no blame whatsoever was attributed to Dr. Schneider by MSP.

29.     MSP failed to take necessary steps to license, certify, open, operate and manage the surgical center and ONISC.

30.     For the reasons stated herein, and as set forth by WSB in its *First Amended Complaint*, the company veil of MSPM must be and should be pierced and direct responsibility, liability, and culpability charged to MSP.

31.     MSP stood in a unique and special relationship to claimants and that relationship required fiduciary, good faith, loyalty and trust duties that both relate to the management duties assumed by MSP and owed to Wyoming Defendants.   MSP breached these

obligations to Claimants by failing to act promptly and diligently; failing to timely advise the Claimants that licensure, or the commitment for licensure, had not been obtained in advance of construction and/or that MSP was not qualified to make such a determination in the state of Montana.   Further, MSP breached this duty by failing to secure the necessary licensure to operate the center.

32.   Respondents breached the implied duty of good faith and fair dealing which duty springs from the contractual relationship between them.  MSP breached the duty of good faith by failing to fully and accurately advise claimants, who are minority members, of its failure to research, understand, and secure licensure to operate the surgery center in advance of construction and, thereafter, failure to fully and honestly advise claimants as to the efforts and lack of progress with securing licensure.

33.   MSP engaged in bad faith, and in doing so breached the covenant of good faith, by claiming that it was not necessary that MSP secure a transfer agreement and insisting the claimants, or their physicians, obtain privileges at a Billings hospital.

34.  MSP further engaged in bad faith, and in doing so breached the covenant of good faith, by failing to act to open the surgery center when Big Horn Basin Bone and Joint, LLC physician Frank Schmidt did, as a mitigation measure, obtain privileges in Billings.  Despite Dr. Schmidt obtaining privileges as demanded by MSP, MSP failed to manage the center so as to open and operate it.

35.  MSP's acts and omissions constitute a bad faith violation of the implied contractual covenant of good faith and fair dealing.

36.  The acts and omissions of MSP constitute willful misconduct.

37.  The acts and omissions of MSP constitute actual and constructive fraud.

38.  During the course of MSP's misconduct, acts, and omissions which give rise to this lawsuit, WSB entered into an agreement where Omni borrowed $3.02 million (the "Loan") for the construction of an ambulatory surgery center in Billings, Montana (the "Billings ASC").

39.  Based on prior pleadings and allegations, Omni entered into a lease agreement (the "Lease") with ONISC, an entity controlled by MSP, and with WSB as collateral agent.

40.   To the degree necessary, the corporate veil of MSPM and of ONISC
      and of Omni must be pierced to attach liability to MSP.  In
      additional support:

   a. Upon information and belief, the Chief Financial Officer for
      MSP, John Wilson, is also CFO for MSPM, Omni, and is
      Secretary of ONISC.

   b. MSPM is a wholly owned subsidiary of MSP.  MSPM has no
      independent directors, officers, employees, or assets.  MSPM
      has not engaged in any corporate activities independent of
      MSP.

   c. MSP has made no attempt to capitalize MSPM and upon
      information and reasonable belief, from the time MSPM
      guaranteed a portion of ONISC's lease obligations to the
      present, was and continues to be negative in equity.  MSPM
      never had the ability to fulfill its economic obligations under
      the agreement with WSB.

   d. MSPM has 46.25% membership interest in ONISC and under
      the membership agreement MSPM controls the board of
      directors of ONISC.

    e.  John Wilson as CFO of Omni executed the Loan and Lease Agreement on behalf of Omni.

    f.  John Wilson as CFO of MSPM executed the MSPM Guaranty on its behalf.

    g.  John Wilson as Chief Financial Officer of MSPM executed a Unanimous Consent under which MSP authorized MSPM to enter into the Guaranty.

    h.  John Wilson as Secretary of ONISC executed the Lease agreement on behalf of ONISC.

    i.  John Wilson and MSP Regional President Kenny Hancock negotiated on behalf of MSP, MSPM, Omni, and ONISC.

41.    Wyoming Defendants entered into a Commercial Guaranty of a portion of Omni's debt to WSB.  MSPM entered into a separate Guaranty with WSB as collateral agent.

42.    In 2012 the Billings ASC was substantially constructed but has yet to open for business.  Despite assurances, MSP or its wholly owned subsidiary MSPM failed to obtain transfer agreements with Billings area hospitals and medical facilities.

## COUNT I:

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH

## AND FAIR DEALING

43.     There is a covenant of good faith and fair dealing in every contract

entered into in the State of Montana.  While the contract between

MSP and the Wyoming Defendants is not reduced to writing, it

nevertheless forms a valid and binding agreement between them.

44.     The covenant is an implied promise in every contract that the

parties will deal with each other in good faith, and not attempt to

deprive the other party of the benefits of the contract through

dishonesty or abuse of discretion in performance.  The breach of

the covenant arises in Tort and has a remedy outside of the

contractual agreement.   There is no written contract between the

Wyoming Defendants and MSP that relates to management,

including financial management, of the Billings ASC.

45.     Wyoming Defendants entered into direct negotiations with MSP

regarding the planning and development of a surgical center, in

this case, the Billings ASC.  Those negotiations included financing

of the Billings ASC.

46.   MSP represented to Wyoming Defendants that they were
      experienced at the acquisition, development, and planning of
      ambulatory surgical centers ("ASC"), including the experience
      necessary to obtain transfer agreements as between any ASC MSP
      planned or developed and local hospitals or medical facilities.

47.   Wyoming Defendants were given assurances throughout the
      negotiation process that MSP would acquire the necessary patient
      transfer agreements ("transfer agreements") and any additional
      licensure.

48.   Wyoming Defendants had a justifiable expectation that MSP could
      obtain these transfer agreements due to MSP's personal
      assurances as well as those given through advertising such as
      MSP's website.  Indeed MSP has branded itself in the industry as a
      company that "specializes in the acquisition, development,
      management, and turnaround of ... ambulatory surgery centers."

49.   MSP failed to notify Wyoming Defendants that they had not even
      inquired into MSP's ability to obtain the transfer agreements in
      and around the Billings area when they solicited a partnership
      and sureties from Wyoming Defendants and began construction

on the Billings ASC.

50. Alternatively MSP failed to exercise accepted commercial practices when they failed to communicate to Wyoming Defendants that Billings area hospitals and/or local medical facilities were unlikely to enter into transfer agreements and therefore the Billings ASC was at significant risk of never opening.

51. In doing so, MSP acted dishonestly in their dealings with the Wyoming Defendants.

52. Additionally, MSP failed to disclose to Wyoming Defendants that their business model creates a risk of contravention of Federal law as is now illustrated and alleged in Plaintiff Western Security Bank's *Amended Complaint* and *Memorandum in Opposition to Motion to Dismiss of Meridian Surgical Partners, LLC.*

53. Through their failure to disclose, MSP has acted outside accepted commercial practices and Wyoming Defendants have been deprived of the benefit of the bargain.

## COUNT II BREACH OF CONTRACT

54. Wyoming Defendants incorporate herein the factual allegations set forth previously.

55.   MSP offered to manage and facilitate all licensure and certification in exchange for the investor-physicians (Wyoming Defendants) investing in the Billings ASC and agreeing to assume debt to build, manage, and operate the Billings ASC.

56.   Wyoming Defendants agreed to invest in the Billings ASC and its related operations and thereby consideration was given and a contract was formed between the parties.

57.   MSP breached its contractual obligations by failing to appropriately manage the Billings ASC, including obtaining the appropriate licensure and accreditation.

58.   The Breach by MSP caused harm to the Wyoming Defendants.

## COUNT III:  PROMISSORY ESTOPPEL AND DETRIMENTAL RELIANCE

59.   Wyoming Defendants incorporate herein the factual allegations set forth previously.

60.   Wyoming Defendants relied on the representations of MSP.

61.   Those representations were untrue and MSP knew, or should have known through the exercise of due diligence that, such representations were untrue.

62.   Wyoming Defendants relied on these false and untrue

representations to their detriment which detriment caused

financial harm to them.

### COUNT IV:  NEGLIGENT MISREPRESENTATION

63.   Wyoming Defendants incorporate herein the factual allegations

set forth previously.

64.   Wyoming Defendants engaged in negotiations directly with MSP.

65.   From the beginning, and throughout negotiations, MSP made

assurances to Wyoming Defendants that they (MSP) would

acquire the necessary transfer agreements with Billings area

hospitals and/or medical facilities.

66.   Without the transfer agreements, the Billings ASC could not be

opened and Wyoming Defendants, through their profession, knew

this.  Wyoming Defendants were told not to worry about it and

that everything was or would be handled by MSP.

67.   MSP also failed to disclose to Wyoming Defendants that their

business model creates a risk of contravention of Federal law as is

now illustrated and alleged in Plaintiff Western Security Bank's

*Amended Complaint* and *Memorandum in Opposition to Motion to*

*Dismiss of Meridian Surgical Partners, LLC.*

68.   MSP made representations as to past and existing material facts, those being the legality of their business operations and their ability to secure the necessary transfer agreements.

69.   In addition to MSPs personal assurances, MSP's website advertises the experience and expertise to plan and develop all aspects of a surgery center like the Billings ASC.

70.   MSP's material representations to Wyoming Defendants (all of them) were made without reasonable grounds for believing them to be true.  This is evidenced by the fact that MSP or its wholly owned subsidiary MSPM never acquired the necessary transfer agreements and the Billings ASC never opened because of it.

71.   Wyoming Defendants were unaware of the falsity of the representations, and have been harmed as a result.

## COUNT V:  FRAUD

72.   Wyoming Defendants incorporate herein the factual allegations set forth previously.

73.   MSP or its wholly owned subsidiary MSPM made representations to Wyoming Defendants that they did or would obtain the

necessary transfer agreements between the Billings ASC and Billings area hospitals and/or medical facilities.  By giving such assurances, they (MSP) created the false impression that MSP had fulfilled this obligation and knew they could or would obtain the agreements.

74.   The transfer agreements are a matter of vital importance to the operation of the Billings ASC.  Without them the Billings ASC cannot operate.

75.   MSP or MSPM intended that Wyoming Defendants would rely upon the representations and in doing so would enter into agreements whereby they gave commercial sureties to fund the Billings ASC.

76.   MSP failed to fully disclose that they either had not spoken to any of the Billings area hospitals or medical facilities or alternatively, they had engaged in negotiations and MSP's ability to obtain the transfer agreements was very questionable and may not happen at all- as has turned out to be the case.

77.   Wyoming Defendants were unaware of the falsity of the representations and justifiably relied on them.

78.   Wyoming Defendants have been injured as a direct and proximate result of their reliance on the representation.

## COUNT VI:  CONSTRUCTIVE FRAUD

79.   Wyoming Defendants incorporate herein the factual allegations set forth previously.

80.   In the alternative, MSP engaged in constructive fraud toward Wyoming Defendants.

81.   Constructive Fraud is a breach of duty without fraudulent intent that creates an advantage for the breaching party by misleading another person to the person's prejudice.

82.   For the reasons stated in Count V above, MSP or its wholly owned subsidiary MSPM has misled Wyoming Defendants through representations concerning MSP's ability to obtain transfer agreements to the Wyoming Defendants' detriment.

83.   At the time of negotiations, MSP had special knowledge that Wyoming Defendants did not possess, namely that they either had not even inquired from Billings area hospitals or medical facilities about the possibility of obtaining transfer agreements, or

alternatively they had and knew it was, at best, questionable as to whether MSP could obtain them.

84.   In doing so, MSP has misled Wyoming Defendants about the ability of MSP to perform its obligations.

85.   Wyoming Defendants have been prejudiced by MSP's acts.

## PRAYER

As a result of the acts, omissions, and conduct of MSP, Wyoming Defendants, and each of them, have been damaged financially in an amount to be proven at trial.  Further, those acts, omissions, and conduct justify an aware of exemplary and/or punitive damages in an amount to be proved at trial.

## JURY DEMAND

Wyoming Defendants (Fourth Party Plaintiff's) hereby request a trial by jury.

DATED this _____ day of June, 2014.

STINSON LAW GROUP, P.C.

LAURENCE STINSON     MT. Bar. 12692
STINSON LAW GROUP, P.C.
1421 Rumsey Avenue
Cody, Wyoming 82414
307.587.0300
Fax: 307.527.6092
Attorney for Third Party Defendants
Jay Winzenreid, M.D., Stepehen
Emery, and Big Horn Basin Bone
and Joint, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on the ___9th___ day of June, 2014, a true copy of the foregoing was served:

Via ECF to the following parties:

Clerk, U.S. District Court

Robert L. Sterup
Shane Coleman
Holland & Hart, LLP
P.O. Box 639
Billings, Montana 59103

Doug James
Moulton Bellingham, P.C.
27 North 27th Street, STE 1900
P.O. Box 2559
Billings, Montana 59103

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN
800 North Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, MT. 59624

ROBIN MARTIN